UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHAMOLIN JANE ROCKEFELLER,

                Plaintiff,

v.

NORTHEAST CENTER FOR REHABILITATION
AND BRAIN INJURY *and* DUTCHESS COUNTY,

                Defendants.

No. 25-CV-5210 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

    Pro se Plaintiff Chamolin Rockefeller ("Plaintiff") filed the instant Action against Dutchess County and the Northeast Center for Rehabilitation and Brain Injury ("NEC," and together with Dutchess County, "Defendants"), pursuant to 42 U.S.C. § 1983, as well as the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973. (*See* Compl. 2–3 (Dkt No. 1).)[1] Before the Court is Plaintiff's Amended Emergency Motion for an Order of Relief or an Injunction (the "Amended Motion") relating to Plaintiff's access to her father, Alfred James Rockefeller III ("Rockefeller"), who is under public guardianship and currently resides at NEC. (*See* Amend. TRO Mot. (Dkt. No. 20); Proposed Order for Emergency Relief (Dkt. No. 21).) Also before the Court is Plaintiff's Amended Motion for Appointment of Counsel ("Amended Counsel Motion"). (*See* Amend. Counsel Mot. (Dkt. No. 22).) For the reasons set forth below, both Motions are denied.

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

I. Background

Plaintiff filed the instant Action on June 23, 2025. (*See* Compl.) In addition to Defendants, the Complaint listed as Defendants Dutchess County Department of Social Services and Judge Keri Savona of the Ulster County Supreme Court. (*See id.* at 1.) That same day, Plaintiff also filed an Application for Pro Bono Counsel, (*see* Dkt. No. 3), and a Motion for a Temporary Restraining Order ("TRO"), (*see* Dkt. No. 8).[2]

On July 21, 2025, the Court denied Plaintiff's TRO Motion as premature, as Plaintiff had not yet served the Complaint or the Motion on Defendants. (*See* Dkt. No. 11.) The Court also issued an Order dismissing Plaintiff's claims against Judge Savona as barred by judicial immunity, substituting Dutchess County for the Dutchess County Department of Social Services, and denying Plaintiff's Application for Pro Bono Counsel. (*See* Order 4–7 (Dkt. No. 12).) The Court also directed the Clerk to issue summons to the Defendants and deliver all documents necessary to effect service to the U.S. Marshals Service. (*Id.* at 7–8.)

Service was executed on Defendants on July 28, 2025. (*See* Dkt. Nos. 17–18.) On July 29, 2025, Plaintiff filed a Certification of Service, averring that the Amended Motion and related papers were served on Defendants. (*See* Dkt. No. 19.) On August 1, 2025, Plaintiff filed her Amended Motion, as well as her Amended Counsel Motion. (*See* Amend. TRO Mot; Amend. Counsel Mot.)

As explained below, Plaintiff has not demonstrated that she is likely to succeed on the merits and, thus, the Court denies Plaintiff's Amended Motion without prejudice. Similarly,

---

[2] On June 25, 2025, Chief U.S. District Judge Laura T. Swain granted Plaintiff permission to proceed in forma pauperis ("IFP"), (*see* Dkt. No. 5), and the case was subsequently reassigned to the undersigned on July 14, 2025, (*see* Dkt. (Notice of Case Reassignment to Judge Kenneth M. Karas, dated July 14, 2025).)

because Plaintiff has not demonstrated that her claims are likely to be of substance, the Court denies the Amended Counsel Motion without prejudice

## II. Discussion

### A. Amended TRO Motion

#### 1. Standard of Review

The standard for the entry of a TRO is the same as for a preliminary injunction. *See Rosa v. Pathstone Corp.*, No. 23-CV-1071, 2023 WL 6813100, at *2 (S.D.N.Y. Oct. 13, 2023); *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (noting that "[t]he standard for an entry of a TRO is essentially the same as for a preliminary injunction," except that TROs are often granted ex parte prior to extensive discovery).

> A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration and quotation marks omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis and quotation marks omitted)); *Free Country Ltd.*, 235 F. Supp. at 565 ("[A] TRO, perhaps even more so than a preliminary injunction, is an extraordinary and drastic remedy . . . ." (quotation marks omitted)). "The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during

the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." *Empire Trust, LLC v. Cellura*, No. 24-CV-859, 2024 WL 1216729, at *2 (S.D.N.Y. Mar. 21, 2024) (quoting *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021)). "These standards apply with equal force where defendants have not appeared and the motion for a preliminary injunction is unopposed." *Roku Inc. v. Individuals, Corps., Ltd. Liab. Corps., P'ships, & Unincorporated Ass'ns*, No. 22-CV-850, 2022 WL 1598208, at *2 (S.D.N.Y. May 20, 2022); *see also JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035, 2019 WL 3051760, at *2 (S.D.N.Y. July 11, 2019) (applying these standards to an unopposed preliminary injuction motion).

2. Analysis

The Court construes the Complaint as raising six causes of action: (1) a claim under the Equal Protection Clause; (2) a due process claim; (3) a reasonable-accommodation claim under the ADA; (4) a claim under Section 504 of the Rehabilitation Act; (5) a retaliation claim; and (6) a claim for intentional infliction of emotional distress. (*See* Compl. 2–3.)

To obtain a TRO, Plaintiff must show that she is likely to succeed on the merits of these claims. Because Plaintiff's claims are based on re-litigating state court proceedings, the Court concludes that they are likely barred and thus, unable to succeed.

First, *Younger* abstention provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Milhaven v. Country Vill. Apartment*, No. 19-CV-2384, 2020 WL 5663380, at *7 (S.D.N.Y. Sept. 23, 2020) (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)). Because "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colo. River Water Conservation Dist.*

*v. United States*, 424 U.S. 800, 813 (1976)), "*Younger* abstention is a 'prudential limitation' grounded in considerations of comity rather than a 'jurisdictional bar' derived from Article III of the Constitution," *Sullivan v. N.Y. State Unified Court Sys.*, No. 15-CV-4023, 2016 WL 3406124, at *6 (S.D.N.Y. June 17, 2016) (quoting *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006)).  The Supreme Court has "clarified that district courts should abstain from exercising jurisdiction only in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). Moreover, "additional factors appropriately considered by the federal court[s] before invoking *Younger*" include whether the ongoing state judicial proceeding "implicates important state interests[] and . . . provides an adequate opportunity to raise federal challenges." *Sprint Cmmc'ns*, 571 U.S. at 81 (citation, emphasis, alterations, and quotation marks omitted).

      Second, "[u]nder the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *6 (S.D.N.Y. Mar. 29, 2019) (quoting *Phillips ex rel. Green v. City of New York,* 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (quotation marks omitted)), *aff'd*, 820 F. App'x 20 (2d Cir. 2020) (summary order).  This doctrine applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *In re Jones v. Pennymac Loan Servs., LLC*, No. 24-CV-200, 2025 WL 786524, at *8 (S.D.N.Y. Mar. 12, 2025) (quoting *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp*, 544 U.S. 280, 284 (2005)).  For this doctrine to apply, (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  *Borrani*, 2019 WL 1429982, at *6 (quotations omitted)); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same).

      Here, Plaintiff's claims, at their core, are all based on Defendants' alleged exclusion of Plaintiff from Rockefeller's guardianship and care, as well as Defendants' alleged limitation of Plaintiff's visits and communications with Rockefeller.  (*See* Amend. Motion 2–4.)  Indeed, the remedies Plaintiff seeks all relate to her father's care, as well as to her access to her father.  (*See id.* at 5 (seeking "[i]mmediate restoration of full in-person visitation access between Petitioner and [Rockefeller,]" "[r]estoration of telephone and remote communication access," "[a]uthorization for [Rockefeller] to attend family events and holidays with Petitioner," "[a]n order requiring [NEC] and Dutchess County to make reasonable accommodations for Petitioner's participation in care planning," "[a]n injunction barring further retaliation, exclusion, or adverse action against [P]etitioner for her protected advocacy or disability status," and "any other relief the Court deems just and proper").)

      However, per the exhibits attached to Plaintiff's Amended Motion, Plaintiff's access to her father—and the extent of her involvement in his care—is governed by a visitation plan entered by Judge Savona in the Ulster County Supreme Court.  (*See* Amend. Mot. 37–39 (Ex. I – May 28, 2025 Letter from H. Mervis, Esq.); *id.* 40–42 (Ex. H. – May 29, 2025 Order, Case No. EF2023-1362).)  In other words, granting Plaintiff the relief she seeks would require relitigating—and potentially reversing—the state court's judgment.

Accordingly, to the extent the state court proceedings are ongoing,[3] *Younger* abstention counsels against this Court exercising jurisdiction over Plaintiff's federal claims. *See Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) ("*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."); *cf. Dickerson v. Siegal*, No. 23-CV-3859, 2023 WL 6158833, at *2 (E.D.N.Y. Sept. 21, 2023) (applying *Younger* abstention where "the requested injunctive relief would require a federal court to interfere with ongoing state court guardianship proceedings"); *Disability Rts. New York v. New York*, 916 F.3d 129, 136 (2d Cir. 2019) (applying *Younger* abstention and noting "states have an especially strong interest" in "guardianship proceedings").  And to the extent that the state court proceedings are concluded, the *Rooker-Feldman* doctrine likely precludes this Court from reviewing the state court's decisions.  *Cf. Shibley v. Brouillette*, No. 24-CV-1367, 2025 WL 1026293, at *5 (N.D.N.Y. Apr. 7, 2025) (dismissing a challenge to a state court child custody determination as barred by *Younger* abstention and the *Rooker-Feldman* doctrine), *report and recommendation adopted*, 2025 WL 1427875 (N.D.N.Y. May 19, 2025); *Siino v. New York City Hum. Res. Admin./Dep't of Soc. Servs.*, No. 14-CV-7217, 2015 WL 1877654, at *4 (E.D.N.Y. Apr. 21, 2015) ("To the extent that Plaintiff seeks review of state court decisions and orders relating to her guardianship proceedings, federal court review of those decisions and orders would be barred by the *Rooker–Feldman* doctrine."); *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 337 (E.D.N.Y. 2012)

---

[3] Plaintiff asserts that "there are no active or pending proceedings in any New York State court regarding the matters raised in this federal action." (Amend. Mot. 36 (Exs. H – C. Rockefeller Declaration Regarding Pending State Proceedings).)  However, the visitation plan adopted by the Court states that it is subject to re-evaluation "every [three] months," subject to "full compliance and good behavior."  (*Id.* at 39 (Ex. H).)  It is thus not entirely clear whether the state court proceedings are fully concluded or ongoing.

7

(adopting a magistrate judge's recommendation that the "*Rooker–Feldman* doctrine precludes jurisdiction over" claims arising "in connection with [a] New York State Conservatorship Proceeding"); *accord Phifer v. City of New York,* 289 F.3d 49, 57 (2d Cir. 2002) (*Rooker–Feldman* precludes federal review of family court proceedings regarding issues of child custody, including issues "inextricably intertwined" with the state court's determinations).

Accordingly, because Plaintiff has not demonstrated she is likely to prevail on the merits, her Amended Motion is denied without prejudice.

B. Amended Counsel Motion

1. Standard of Review

Although there is not a constitutional right to counsel in civil cases, the Court has the authority to appoint counsel for indigent parties. *See* 28 U.S.C. § 1915(e)(1). "Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

When analyzing whether appointment of counsel is appropriate, the Court should undertake a two-step inquiry. *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203–04 (2d Cir. 2003). First, the Court "'should . . . determine whether the indigent's position seems likely to be of substance.'" *Id.* at 203 (quoting *Hodge*, 802 F.2d at 61); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) ("This Court considers motions for appointment of counsel by asking first whether the claimant has met a threshold showing of some likelihood of merit." (internal quotation marks omitted)). In other words, the claim must not be so "highly dubious" that the plaintiff appears to have no chance of success. *Hodge*, 802 F.2d at 60 (internal quotation marks omitted). In making this determination, the Court construes pleadings drafted by pro se litigants liberally and interprets them "to raise the strongest arguments that they suggest." *See*

8

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted); *Sommersett v. City of New York,* 679 F. Supp. 2d 468, 472 (S.D.N.Y. 2010).

If the threshold requirement is met, the Court should then proceed to consider other prudential factors such as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented [to the fact finder], the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Ferrelli*, 323 F.3d at 203–04 (quoting *Hodge*, 802 F.2d at 61–62); *see also Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (listing factors courts should consider, including the litigant's efforts to obtain counsel).

"Additionally, the Second Circuit has interpreted [28 U.S.C. § 1915(e)(1)] to require that the plaintiff be unable to obtain counsel 'before appointment will even be considered.'" *Morris v. Moran*, No. 12-CV-7020, 2014 WL 1053658, at *1 (S.D.N.Y. Mar. 14, 2014) (quoting *Hodge*, 802 F.2d at 61); *see also Justice v. Kuhnapfel*, 982 F. Supp. 2d 233, 235 (E.D.N.Y. 2013) ("A plaintiff requesting appointment of counsel must show that she is unable to obtain counsel before appointment will even be considered." (internal quotation marks omitted)); *Williams v. Nicholson*, No. 12-CV-8300, 2013 WL 1800215, at *2 (S.D.N.Y. Apr. 22, 2013) ("Where, in a civil action, an applicant fails to make any effort to engage counsel, appointing counsel for the applicant is not appropriate and should not even be considered . . . .").

2. <u>Analysis</u>

Plaintiff renews her motion for pro bono counsel, asserting that she has "significant, long-standing disabilities that substantially impair her ability to litigate this case alone." (Amend. Counsel Mot. 2.)

9

The Court denied Plaintiff's prior application for pro bono counsel as premature, concluding that it was "too early in the proceedings for the Court to assess the merits of the action" and noting that Plaintiff had "provide[d] limited evidence that she attempted to obtain counsel." (Order 6–7 (Dkt. No. 12).) Plaintiff attempts to correct the latter deficiency in the Amended Counsel Motion, now explaining she has "made multiple good faith attempts to secure counsel," including reaching out to specific legal service organizations and "[a]ttempting to retain private attorneys but being denied due to complexity, perceived risk, or cost barriers." (Amend. Counsel Mot. 3.) Plaintiff also provides additional detail about her disability and how it allegedly hampers her ability to present her case. (*Id.* at 2.)

However, Plaintiff falters on the first step of the *Hodge* analysis—i.e., demonstrating that her "position seems likely to be of substance." *Ferrelli*, 323 F.3d at 203. Because Plaintiff's claims are most likely barred, as discussed above, her case has limited chance of success. Accordingly, her Amended Counsel Motion is denied without prejudice. *See MacNeal v. New York City Comm'n on Hum. Rts.*, No. 23-CV-5890, 2023 WL 8457918, at *2 (S.D.N.Y. Nov. 20, 2023) (denying application for pro bono counsel where plaintiff's claim "d[id] not seem likely to be of substance and therefore d[id] not provide an adequate basis to grant [p]laintiff's request" (quotation marks omitted)); *Harris v. City of New York*, No. 23-CV-6344, 2023 WL 6542019, at *2 (S.D.N.Y. Sept. 11, 2023) (denying application for pro bono counsel where plaintiff's claims were likely untimely and barred by absolute immunity), *reconsideration denied*, 2023 WL 7474419 (S.D.N.Y. Oct. 12, 2023); *Garner v. Dwyer*, No. 09-CV-5767, 2010 WL 2899392, at *3 (S.D.N.Y. July 19, 2010) (denying application for pro bono counsel without prejudice where it "appear[ed] that plaintiff's claims [were] without merit").

III.  Conclusion

Because Plaintiff has not demonstrated that she is likely to succeed on the merits, the Court denies Plaintiff's Amended Motion for a TRO, as well as her Amended Counsel Motion, without prejudice.[4]  The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 20, 22), and to mail a copy of this Order to Plaintiff.

SO ORDERED.

DATED:   August 5, 2025
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[4] To be clear, in so holding, the Court does not necessarily suggest that Plaintiff *cannot* succeed on the merits, or even that she has not stated a claim upon which relief can be granted; rather, the Court simply holds that Plaintiff has not established a likelihood of success on the merits on the record before it.  Similarly, the Court does not necessarily suggest that the appointment of pro bono counsel may *never* be warranted, merely that it is not warranted at this time.