UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAMOLIN JANE ROCKEFELLER,<br>*Plaintiff*,<br>v.<br>NORTHEAST CENTER FOR REHABILITATION AND BRAIN INJURY, *et al.*,<br>*Defendants*. | No. 25-CV-5210 (KMK)<br><br>ORDER & OPINION |

Appearances:

Chamolin Jane Rockefeller
Athens, NY
*Counsel for Plaintiff*

Lori Rosen Semlies, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
White Plains, NY
*Counsel for Defendant Northeast Center for Rehabilitation and Brain Injury*

Steven Vincent DeBraccio, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
Albany, NY
*Counsel for Defendant Northeast Center for Rehabilitation and Brain Injury*

Kimberly Hunt Lee, Esq.
Sokoloff Stern LLP
Poughkeepsie, NY
*Counsel for Defendant Dutchess County*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Chamolin Rockefeller ("Plaintiff") filed the instant Action against Dutchess County and the Northeast Center for Rehabilitation and Brain Injury (the "Center," and together with Dutchess County, "Defendants"), pursuant to 42 U.S.C. § 1983, as well as the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973.

(*See* Compl. 2–3 (Dkt. No. 1).) Her claims are based on an asserted denial of her ability to visit her father, Alfred J. Rockefeller ("Mr. Rockefeller"). (*See generally* Compl.) Before the Court are Defendants' Motions to Dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. to Dismiss for Lack of Jurisdiction and Failure to Plead a Claim ("Center Mot.") (Dkt. No. 52); Mot. to Dismiss ("County Mot.") (Dkt. No. 64).) For the reasons that follow the Motions to Dismiss are granted.

## I. Background

### A. Factual Background

Unless otherwise stated, the following facts are drawn from the Complaint and the exhibits therein, as well as other relevant materials submitted by Plaintiff that are consistent with those allegations, as well as materials submitted by Defendants to the extent that those materials are properly considered on a Motion to Dismiss.[1] The facts alleged therein are assumed true for

[1] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *accord Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Thomas*, 232 F. Supp. 2d at 275; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (same).

Moreover, the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum," *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022) (quotation marks and citation omitted), "to the extent that those allegations are consistent" with the Complaint, *Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020) (citation omitted); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum). Accordingly, and as noted throughout, the Court has considered supplementary materials submitted by the Plaintiff where they are consistent with the allegations in her Complaint.

the purpose of resolving the instant Motions. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

Plaintiff is the adult disabled child of Alfred J. Rockefeller ("Mr. Rockefeller"), as well as his healthcare proxy, dependent, and named beneficiary in a family trust. (Compl. ¶ 7.)

On April 21, 2023, it appears that Mr. Rockefeller was receiving medical care and that the treating facility sought to transfer him to the Northeast Center for Rehabilitation and Brain Injury. (Dkt. No. 82 at 2.)[2] Mr. Rockefeller refused the transfer on April 21, 2023, and again on April 24, 2023. (*Id.*) He was eventually admitted to the Center on or around April 25, 2023. (*Id.*) According to Plaintiff, Mr. Rockefeller was "sedated and transported against his will," without any court proceeding or opportunity to be heard prior to the transfer. (*Id.*; *see also* Dkt. No. 37 at 63 (reflecting admission date of April 25, 2024 upon transfer from Northern Dutchess Hospital); Decl. of Steven V. Debraccio, Esq. in Supp. re: Mot. to Dismiss, Ex. E ("Center's Reply") 1 n.1 (Dkt. No. 63-1) (noting discrepancy in dates on document and attributing it to scrivener's error, and agreeing with Plaintiff that Mr. Rockefeller was admitted in 2023).) Upon admission, Mr. Rockefeller listed Plaintiff as a responsible party for his medical care, and later signed a healthcare proxy to that effect. (Dkt. No. 82 at 2.)

In June 2023, it appears that a guardianship proceeding regarding Mr. Rockefeller commenced under Article 81 of New York's Mental Hygiene Law in response to a petition by

---

[2] Many of the documents filed by Plaintiff have the same name or are confusingly titled. Accordingly, the Court cites most of her filings by referring to the document number as generated by the Court's Electronic Case Filing system.

Generally, in citing documents from the record, unless otherwise noted the Court uses page numbers on the documents themselves when those documents are paginated; when they are not paginated (or inconsistently paginated), the Court uses page numbers as designated by the Court's Electronic Case Filing System, which appear on the upper-right corner of each electronically filed page.

Northeast Center for Rehabilitation and Brain Injury. (Aff. of Kimberly Hunt, Esq. ("Hunt Aff."), Ex. B, at 2–3 (Dkt. No. 65-2).)[3] According to Plaintiff, around this same time or shortly before the Article 81 proceedings began, the Center began ordering her to leave, over Mr. Rockefeller's objection, blocking his discharge and otherwise failing to send him for already scheduled medical appointments. (Dkt. No. 82 at 2.) On June 15, 2023, a nurse practitioner who had apparently already been treating Mr. Rockefeller "trespassed" at the facility, after which point the Center took Mr. Rockefeller's cell phone, which—of course—interfered with Plaintiff's ability to contact him. (*Id.*)

On May 3, 2024, the Commissioner of the Ulster County Department of Social Services was appointed guardian of Mr. Rockefeller's property and person by the Supreme Court of the State of New York, County of Ulster, with Judge Keri E. Savona presiding ("Judge Savona"). (Hunt Aff., Ex. F, at 1, 4 (Dkt. No. 65-6).) On May 20, 2024, the earlier order was amended such that the Commissioner of the Dutchess County Department of Community and Family Services was appointed guardian of Mr. Rockefeller's property and person. (*Id.* at 1; Hunt Aff., Ex. B, at 15; *see also* Hunt Aff., Ex. C (Dkt. No. 65-3).) In that order, however, it was noted in a handwritten and initialed modification that "the Guardian shall not have the authority to override any decisions made by any facility in which [Mr. Rockefeller] is residing with respect to visitation and time spent with Mr. Rockefeller." (Hunt Aff., Ex. C, at 8.)

---

[3] The Court may consider this document, although it is not incorporated directly in Plaintiff's Complaint, and other filings from the Article 81 proceedings cited herein because "[a] court can properly take judicial notice of documents filed in another court's docket to establish the fact of the litigation and related filings." *Palisades Ests. EOM, LLC v. County of Rockland*, No. 23-CV-4215, 2025 WL 1295333, at *42 n.51 (S.D.N.Y. May 5, 2025), *reconsideration denied*, 2025 WL 3687555 (S.D.N.Y. Dec. 19, 2025).

It appears that, in June of 2024, Plaintiff attempted to appeal the Supreme Court of the State of New York, County of Ulster's decision to the Appellate Division, Third Judicial Department. (*See* Hunt Aff., Ex. D, at 2 (Dkt. No. 65-4).) She claimed that the decision represented "unilateral[] changes by the judge," Judge Savona, "without notice," in response to "an ex[ ]parte" "demand by a party," and accusing Judge Savona of being "[b]iased" towards an attorney who, she claims, was assertedly Judge Savona's "close friend[] from [l]aw school." (*Id.* at 5.) She raised other purported issues, such as the Center preventing her from visiting Mr. Rockefeller, Judge Savona improperly preventing the case from being heard in Dutchess County, and Judge Savona excluding certain testimony. (*Id.*)

In March 2025, Plaintiff filed an Order to Show Cause requesting certain changes to her father's care as well as a stay of the guardianship. (Hunt Aff., Ex. E, at 2 (Dkt. No. 65-6).) Judge Savona denied this request. (*Id.* at 4.)

Plaintiff says that she has not seen Mr. Rockefeller since March 2025. (Compl. ¶ 11.) Moreover, she has been labeled as "dangerous and disruptive in institutional records" without due process. (*Id.* ¶ 12.) In retaliation for her filing complaints, (Pl.'s Reply Mem. in Opp'n to Def. Northeast Center's Mot. to Dismiss ("Pl.'s Opp'n to Center's Mot.") 4 (Dkt. No. 54)), Plaintiff says that the Northeast Center for Rehabilitation and Brain Injury has shut her out of care planning and prevented her from visiting without sufficient explanation, (Dkt. No. 55 at 2–3). Plaintiff says that when she attempts to "seek or speak with" Mr. Rockefeller, she "face[s] barriers" that "cause . . . great emotional distress and physical hardship"; specifically, she says that she is "told what [she] may or may not say" while visiting, that visits "occur under surveillance in a glass room" with limited time, and that plaintiff is "fearful of being falsely accused, . . . yelled at, or of upsetting [her] father." (Dkt. No. 57 at 1; *see also* Dkt. No. 76 at 1–

3 (describing incident where Plaintiff "submitted a written request to both Dutchess County DSS and [the] Center" seeking to "access with her father" for the Thanksgiving and Christmas Eve holidays, including a "home visit[] with return to the facility thereafter," which went unanswered); Dkt. No. 78 at 1 (explaining that Plaintiff sought inclusion in care planning and has sought to have Mr. Rockefeller allowed access to a telephone).) Plaintiff further claims that she was denied entry to visit another resident on behalf of a friend as "retaliation against [her] for lawful advocacy." (Dkt. No. 61 at 4.) She claims also that the Center is fabricating complaints about her activities. (Dkt. No. 82 at 3.)

Plaintiff says that she suffers from an unspecified disability. (*E.g.*, Compl. ¶ 15; Dkt. No. 77 at 1 (describing Plaintiff as "a qualified individual with a disability"); Dkt. No. 79 at 1–2 (purporting to elucidate the nature of Plaintiff's disability, but stating only that she "experiences disability-based limitations including trauma-response, cognitive overload with remote communication, stress-induced neurological impairment, and difficulty processing proceedings without in-person participation").) She has requested certain accommodations, including "written communication options and visitation flexibility," which she has not received. (Compl. ¶ 15.) Additionally, Plaintiff alleges that she has been denied in-person meetings and told she cannot bring a "support person" to meetings with the Northeast Center. (Dkt. No. 61 at 3; *see also* Dkt. No. 82 at 4 (alleging that Plaintiff's "support persons were banned permanently"; the Center "accused Plaintiff of 'religious extremism'"; and "Plaintiff [was] threatened with trespass arrest merely for attending meetings").) These allegations appear connected to an incident on April 14, 2026, on which date, Plaintiff says, "[l]aw enforcement was contacted," "[a] false statement was made regarding a restraining order," and Plaintiff's "support person was removed." (Decl. of Chamolin Rockefeller (Dkt. No. 96); *see also* Dkt. No. 97.)

Plaintiff represents that she has gradually watched her father decline while in the care of Northeast Center, and understandably is deeply distressed by this decline. (Dkt. No. 61 at 6–7.)

B. Procedural Background

Plaintiff filed the instant Action on June 23, 2025. (*See* Compl.) In addition to Defendants, the Complaint listed as Defendants Dutchess County Department of Social Services and Judge Keri Savona of the Ulster County Supreme Court. (*See id.* at 1.) That same day, Plaintiff also filed an Application for Pro Bono Counsel, (*see* Dkt. No. 3), and a Motion for a Temporary Restraining Order ("TRO"), (*see* Dkt. No. 8).

On June 25, 2025, Chief Judge Laura Swain granted Plaintiff permission to proceed in forma pauperis ("IFP"), (*see* Dkt. No. 5), and the case was subsequently reassigned to this Court on July 14, 2025, (*see* Dkt. (Notice of Case Reassignment to Judge Kenneth M. Karas, dated July 14, 2025).)

On July 21, 2025, the Court denied Plaintiff's TRO Motion as premature, as Plaintiff had not yet served the Complaint or the Motion on Defendants. (*See* Dkt. No. 11.) The Court also issued an Order dismissing Plaintiff's claims against Judge Savona as barred by judicial immunity, substituting Dutchess County for the Dutchess County Department of Social Services, and denying Plaintiff's Application for Pro Bono Counsel. (*See* Order 4–7 (Dkt. No. 12).) The Court also directed the Clerk to issue summons to the Defendants and deliver all documents necessary to effect service to the U.S. Marshals Service. (*Id.* at 7–8.)

Service was executed on Defendants on July 28, 2025. (*See* Dkt. No. 17; Dkt. No. 18.) On July 29, 2025, Plaintiff filed a Certification of Service, averring that the Amended Motion and related papers were served on Defendants. (*See* Dkt. No. 19.) On August 1, 2025, Plaintiff filed another motion seeking a TRO, as well as another Motion seeking appointment of counsel.

(*See* Dkt. No. 20; Dkt. No. 21; Dkt. No. 22.) The Court denied these motions, finding that Plaintiff had not demonstrated that her claims were likely to succeed or be of substance. *See Rockefeller v. Ne. Ctr. for Rehab. & Brain Inj.* ("*Rockefeller I*"), No. 25-CV-5210, 2025 WL 2243583, at *2–4 (S.D.N.Y. Aug. 5, 2025).

On August 28, 2025, Plaintiff again filed a motion seeking emergency relief. (*See* Dkt. No. 37.) The Court directed Defendants to respond. (Order dated Sept. 2, 2025 (Dkt. No. 34).) Shortly thereafter, the Court set a briefing schedule on an anticipated Motion to Dismiss by the Center, (Order dated Sept. 2, 2025 (Dkt. No. 35)). When briefing on Plaintiff's second emergency motion was completed, the Court denied Plaintiff's request, finding that she had not demonstrated a likelihood of success on the merits. *See generally Rockefeller v. Ne. Ctr. for Rehab. & Brain Inj.* ("*Rockefeller II*"), No. 25-CV-5210, 2025 WL 2821826, at *2–3 (S.D.N.Y. Oct. 3, 2025).

On October 2, 2025, the Center filed its Motion to Dismiss, as well as a memorandum of law and other materials in support thereof. (*See* Center's Mot.; Center's Mot., Ex. D ("Center's Mem.") (Dkt. No. 52-5).) In a document dated October 3, 2025 (the very next day), Plaintiff began a barrage of filings arguing that her claims were meritorious, including a brief in opposition to the Motion. (*See* Pl.'s Opp'n to Center's Mot. (Dkt. No. 54).) She continued to make similar submissions during the month of October. (*See* Dkt. No. 57; Dkt. No. 58.) On October 30, 2025, Plaintiff made another such submission (Dkt. No. 61), which the Court construed as a fourth request for emergency relief and denied, (Mem. Endorsement dated Nov. 3, 2025 (Dkt. No. 62)). On November 17, 2025, the Center filed its reply brief in support of its Motion. (*See* Center's Reply.)

Meanwhile, on October 21, 2025, the Court set a briefing schedule on an anticipated Motion to Dismiss by the County. (*See* Order dated Oct. 21, 2025 (Dkt. No. 60).) The Motion was filed on November 21, 2025, along with a supporting memorandum of law. (*See* County's Mot.; Mem. of Law in Supp. re: Mot. to Dismiss ("County's Mem.") (Dkt. No. 66).) On December 19, 2025, Plaintiff filed various materials in opposition to both the County's Motion to Dismiss and the earlier-filed Motion to Dismiss by the Center. (*See* Dkt. No. 75; Dkt. No. 76; Dkt. No. 77; Dkt. No. 78; Dkt. No. 79; Dkt. No. 80; Dkt. No. 81; Dkt. No. 82; Dkt. No. 83.) Although, to the extent these materials were submitted in opposition to the Center's Motion, they were not timely filed, the Court determined it would consider them and permitted the Center to file a sur-reply brief to address their contents. (*See* Mem. Endorsement dated Dec. 31, 2025 (Dkt. No. 89).) On January 5, 2026, the County filed a reply memorandum in support of its Motion to Dismiss. (*See* Reply Mem. of Law in Supp. re: Mot. to Dismiss ("County's Reply") (Dkt. No. 90).) On January 9, 2026, the Center filed a sur-reply brief. (*See* Second Reply Mem. of Law in Supp. re: Mot. to Dismiss ("Center's Sur-Reply") (Dkt. No. 92).)

On April 24, 2026, Plaintiff filed yet another request for emergency relief—the fifth such request—as well as supporting materials. (*See* Dkt. No. 93; Dkt. No. 94; Dkt. No. 95; Dkt. No. 96; Dkt. No. 97.) On May 20, 2026, the County and the Center filed their opposition briefs. (*See* Decl. of Kimberly Hunt Lee, Esq. in Opp'n re: Motion for Preliminary Injunction, Ex. A (Dkt. No. 103-1); Mem. of Law in Opp'n re: Mot. for Preliminary Injunction (Dkt. No. 106).) On May 21, 2026, Plaintiff filed a "Supplemental Declaration," purporting to support her emergency relief request. (Dkt. No. 115.) On May 28, 2026, the Court denied Plaintiff's request for emergency relief for substantially the same reasons as her earlier requests. (*See* Order dated May 28, 2026 (Dkt. No. 116).)

## II. Discussion

### A. Standard of Review

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (quotation marks and citation omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citations omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, as noted, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (S.D.N.Y. Dec. 15, 2010) (italics omitted) (citation omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)

(internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B. Analysis

As the Court has already explained, it "construes the Complaint as raising" nine "causes of action . . . : (1) a claim under the Equal Protection Clause; (2) a due process claim; (3) a reasonable-accommodation claim under the ADA; (4) a claim under Section 504 of the Rehabilitation Act; (5) a retaliation claim [likely under the ADA and the First Amendment[4]]; and (6) a claim for intentional infliction of emotional distress, . . . and notes that Plaintiff further asserts (7) a violation of the Nursing Home Reform Act, 42 U.S.C. § 1396r; . . . (8) breach of fiduciary duty" and (9) abuse of process. *Rockefeller II*, 2025 WL 2821826, at *2. (*See generally* Compl.; Pl.'s Opp'n to Center's Mot.) The Court construes Plaintiff as raising claims (1), (2), and (5) under 42 U.S.C. § 1983; the Court considers claim (9) to be asserted either pursuant to 42 U.S.C. § 1983 or purely under New York state law. Plaintiff does not differentiate which claims she is asserting against which Defendant.

1. Rooker-Feldman Doctrine

"[T]he *Rooker-Feldman* doctrine[] . . . bars federal courts from exercising 'jurisdiction over cases that essentially amount to appeals of state court judgments.'" *File v. Rashid*, No. 24-CV-2481, 2026 WL 1864138, at *6 (E.D.N.Y. June 29, 2026) (quoting *Vossbrinck v. Accredited*

---

[4] In one of her filings, Plaintiff cited 42 U.S.C. § 12203 as the basis for her retaliation claim though, in the same filing, she cites her First Amendment rights in conjunction with "retaliation for protected advocacy." (Dkt. No. 80 at 2–3.)

*Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam)). It applies "only when a party 'complains of injuries caused by state-court judgments rendered before federal district court proceedings commenced.'" *Id.* (quoting *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, 146 S. Ct. 1739, 1748 (2026)) (alterations adopted). As the Supreme Court has recently explained, where a plaintiff "is complaining of injuries caused by, and is seeking relief from, [a] state-court judgment itself, arguing that the [state court] order violates her federal and state due process rights," the plaintiff "plainly seeks review and rejection of the [state court] order" from the federal district court. *T.M.*, 146 S. Ct. at 1748 (quotation marks omitted and alterations adopted). This situation, the Supreme Court explained, "is the paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding" because the plaintiff simply "does not like the result reached in state court and repaired to federal court to undo the state judgment in her favor." *Id.* (quotation marks omitted and alterations adopted). And, as the Supreme Court further explained, *Rooker-Feldman* is not limited solely to "federal suits seeking review and rejection of final judgments that are rendered by the highest court of a State in which a decision could be had," *id.* at 1748 (quotation marks omitted and alterations adopted), but instead applies with equal force to suits that would "allow[] federal district courts to review state-court judgments while they are on appeal in the state-court system," *id.* at 1751. The doctrine applies when four conditions are met:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.

*Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam) (quotation marks and alterations omitted).

Insofar as Plaintiff seeks to challenge any harm stemming from the state court order appointing a guardian over her father, "the Court does not have jurisdiction to review that judgment," because all four *Rooker-Feldman* elements are satisfied. *Sullivan v. Banks*, No. 24-CV-3251, 2026 WL 2283655, at *7 n.3 (S.D.N.Y. Aug. 7, 2026).[5] As to the first element, Plaintiff is a state court "loser" because "in [the state court] proceedings [Mr. Rockefeller] was deemed incompetent, [and a County official], rather than [Plaintiff], [was] appointed as [Mr. Rockefeller's] guardian." *Galanova v. Portnoy*, 432 F. Supp. 3d 433, 443 (S.D.N.Y. 2020). She also asserts "injuries" stemming from the judgment, in the form of limitations on visitation and her father's exclusion from family events. *Cf. id.* at 443 (explaining that where the plaintiffs alleged "injuries to their bank accounts and assets that resulted from the actions taken by persons and entities acting under the authority of the guardianship appointment" made as part of the state court judgment, the challenge fell within the scope of *Rooker-Feldman*). It is clear that the order is a "judgment"—in fact, Judge Savona used this word to describe the Order—rendered prior to these proceedings commencing. (Center's Mot., Ex. A, at 4 (Dkt. No. 52-2).) And Plaintiff plainly wants it reviewed—enjoined, its terms changed or, at best, an order to issue dictating alternative methods by which the appointed entities should exercise their state-court-appointed authority. (*See, e.g.*, Compl. 3 (requesting that the Court "restore visitation and unrestricted communication" "[p]rohibit Defendants from issuing or enforcing any further restrictions," and "[r]equire Defendants to provide ADA-compliant access and written notice of any care plans").) To grant this request would be to sit in review of a state court judgment,

---

[5] To the extent that the County argues that the bar established by *Rooker-Feldman* is constitutional in nature, (*see* Mem. of L. in Supp. re: Mot. to Dismiss ("County Mem.") 5 (Dkt. No. 66)), the County errs "[b]ecause the doctrine implicates statutory rather than constitutional jurisdiction," *New York v. Trump*, 158 F.4th 458, 466 (2d Cir. 2025).

which this Court cannot do. *See Shibley v. Brouillette*, No. 24-CV-1367, 2025 WL 1026293, at *4–5 (N.D.N.Y. Apr. 7, 2025) (dismissing a challenge to a state court child custody determination as barred by *Younger* abstention and the *Rooker-Feldman* doctrine), *report and recommendation adopted*, 2025 WL 1427875 (N.D.N.Y. May 19, 2025); *Walton v. Rubel*, No. 16-CV-1989, 2018 WL 3369664, at *5 (E.D.N.Y. July 10, 2018) (concluding that "under the *Rooker-Feldman* doctrine[,] the [c]ourt lacks the jurisdiction to hear [the plaintiff's] claims that would require it to review the competency proceedings in the state court and effectively reverse that court's determination"); *Zavalidroga v. Girouard*, No. 17-CV-682, 2017 WL 8777370, at *6 (N.D.N.Y. July 7, 2017) ("The relief section of the complaint asks that this court enjoin defendants from having . . . further control or contact with [the incompetent individual] and order her immediate release from custody. The complaint also contains a request a 'restoration' of all the contracts between [the plaintiff] and [the incompetent individual]. In order for this court to grant either one of those requests, it would have to overturn [the state court's] finding that [the individual] was not competent . . . ."); *Siino v. New York City Hum. Res. Admin.*, No. 14-CV-7217, 2015 WL 1877654, at *4 (E.D.N.Y. Apr. 21, 2015) ("To the extent that Plaintiff seeks review of state court decisions and orders relating to her guardianship proceedings, federal court review of those decisions and orders would be barred by the Rooker-Feldman doctrine."); *cf. Young v. Murphy*, 90 F.3d 1225, 1231 (7th Cir. 1996) (distinguishing between suits that allege injury stemming from the judgment itself and claims of unconstitutional process in the state court proceeding, the former of which would be subject to *Rooker-Feldman*).[6]

---

[6] In so far as the Court previously expressed the view that "it [was] not entirely clear whether the state court proceedings are fully concluded or ongoing," due to the visitation plan being "subject to re-evaluation" every three months, *Rockefeller I*, 2025 WL 2243583, at *5 n.3, the Court now concludes that the visitation plan's re-evaluation has no bearing on the analysis.

Plaintiff's sole response to the argument that *Rooker-Feldman* bars her claims is that the doctrine "does not apply" unless she "is . . . appealing a[] state-court judgment." (Pl.'s Opp'n to Center's Mot. 5; *see also* Dkt. No. 78 at 2 (characterizing Plaintiff's challenges as one to the Center's policies, rather than the outcome of the state court proceedings); Dkt. No. 83 at 1 (substantially same); Dkt. No. 81 at 3 (arguing that "Plaintiff expressly accepts the existence of the guardianship order" but nevertheless seeks to challenge Defendants' "implementing restrictions not mandated by the order"); Dkt. No. 82 at 5 ("The injury arises from Defendants' conduct, not the order.").) But Plaintiff misunderstands the scope of the rule: it bars "a district court [from the] exercise [of] jurisdiction over claims of injury stemming from a state-court judgment, even if the plaintiff appears to complain only of a third party's actions, when those actions are produced by a state-court judgment." *Christen v. U.S. Bank Nat'l Ass'n as trustee for RCF Acquisition Tr.*, No. 23-CV-2122, 2024 WL 3443423, at *5 (E.D.N.Y. July 17, 2024) (alterations adopted and quotation marks omitted). Because all of the injuries underlying Plaintiff's equal protection and due process claims seek to challenge events stemming from a

---

First, that plan is set by the Rehabilitation Center, not any court, (Dkt. No. 20 at 39), and so is not properly conceptualized as a pending proceeding within the meaning of *Younger*. Second, the Supreme Court's recent holding in *T.M.*, 146 S. Ct. 1739, demonstrates that the ongoing nature of the proceedings (*i.e.*, where an injury stems from a judgment but that judgment is, in some sense, non-final because it is subject to additional review) does not determine the applicability of the *Rooker-Feldman* rule, which instead hinges on whether the relief sought would effectively lead a federal court to sit in review of a state court's judgment, as here, *id.* at 1749.

Still, if there are any pending state court proceedings that Plaintiff seeks to challenge that are separate from the existing state court judgment, they would counsel in favor of *Younger* abstention for the same reasons described in the Court's earlier Opinions in this Action. *Rockefeller II*, 2025 WL 2821826, at *2 ("To the extent those state proceedings are ongoing, Plaintiff's request is likely subject to *Younger* abstention . . . ."); *Rockefeller I*, 2025 WL 2243583, at *3 ("Accordingly, to the extent the state court proceedings are ongoing, *Younger* abstention counsels against this Court exercising jurisdiction over Plaintiff's federal claims." (footnote omitted)).

state court judgment and, in effect, ask the Court to review that judgment, they are barred by *Rooker-Feldman*.

Additionally, the conclusion that, under *Rooker-Feldman*, Plaintiff may not use this Action as a vehicle to challenge the state court's judgment, resolves all of Plaintiff's claims to the extent that they are asserted against the County. Pursuant to Plaintiff's allegations and pleadings, the County's sole involvement is that it was appointed as Mr. Rockefeller's guardian, and (somewhat implicitly) that it has not discharged him although an attorney for the Center indicated "to Plaintiff—in the presence of a third-party witness—that [the Center] is willing to discharge or transfer [Mr. Rockefeller] home" if the County, as guardian, "authorizes it." (Dkt. No. 83 at 3; *see also* Compl.) All of these actions constitute challenges to the state court's order not subject to review by this Court.[7] *See Galanova*, 432 F. Supp. 3d at 444 (explaining that a challenge to the validity of the outcome of guardianship proceedings, and seeking to invalidate all subsequent actions taken by the appointed guardian, fell within the scope of *Rooker-Feldman*); *Zavalidroga v. Madison County*, No. 17-CV-117, 2017 WL 9509963, at *11

---

[7] Arguably, *Rooker-Feldman* dictates the dismissal of all the claims asserted here, as Plaintiff's allegations all relate to the terms of her visitation with Mr. Rockefeller. (*See generally* Compl.) The state court, rather than the County as guardian, directed Northeast Center to produce the visitation schedule for Plaintiff and her children—indeed, it appears that the state court made the determination that visitation would be the exclusive purview of the Center rather than have any involvement of the County. (*See* Dkt. No. 20 at 42 ("[T]he guardian shall not have the authority to override any decisions made by any facility in which ALFRED J. ROCKEFELLER, III, is residing with respect to visitation and time spent with ALFRED J. ROCKEFELLER, III[] . . . ."")). In the name of fairness to the pro se Plaintiff, however, the Court will assume that there exists some path to challenge the hospital's actions.

Additionally, as all of the claims against the County are either barred by *Rooker-Feldman* or, as described further below, not viable, the Court need not consider whether Plaintiff has adequately alleged facts that would allow her to proceed on a *Monell* theory. *See Walker v. City of Buffalo*, No. 22-CV-520, 2025 WL 828242, at *2 (W.D.N.Y. Mar. 17, 2025) ("The threshold element of a *Monell* claim is that an underlying violation of federal law occurred.").

(N.D.N.Y. Apr. 14, 2017) ("[The] [p]laintiff, through his . . . claim in this case seeks, in effect, to appeal to the district court from [the] . . . determinations in the state court guardianship proceeding and have the district court return things between [the] [p]laintiff and [an incapacitated individual] to pre-guardianship proceeding status. The district court is barred from doing so under the *Rooker-Feldman* doctrine." (citation omitted)), *report and recommendation adopted*, 2017 WL 2875639 (N.D.N.Y. July 6, 2017); *In re Card*, No. 12-CV-114, 2012 WL 382730, at *1–2 & n.5 (E.D.N.Y. Feb. 6, 2012) (holding that a challenge to a state court order appointing a guardian and requesting reversal of various of the guardian's actions fell within the scope of the *Rooker-Feldman* doctrine).

2. State Action

The foregoing analysis leaves only claims against the hospital, and only to the extent that those claims, too, do not seek review of a state court's judgment. The Court determines that these claims fail, however, because the hospital cannot be understood to be a state actor in this context, and therefore is not susceptible to suit under 42 U.S.C. § 1983.

The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "A plaintiff pressing a claim of violation of h[er] constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the

deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

"Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character" that it can be regarded as governmental action. *Evans v. Newton*, 382 U.S. 296, 299 (1966); *see also Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (per curiam) (recognizing that "actions of nominally private entities are attributable to the state" under certain circumstances). For a private entity to become a state actor for purposes of § 1983, "there must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and quotation marks omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Although there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (citation omitted), three main tests have emerged:

> For the purposes of [§] 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state, ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (alterations and some quotation marks omitted); *see also Hollander*, 624 F.3d at 34 (same). The "ultimate issue" in this analysis is whether the private entity's actions are "fairly attributable" to the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). "In analyzing whether a private entity acts under color of state law for purposes of § 1983, [courts] begin by

identifying the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Fabrikant*, 691 F.3d at 207 (citation and quotations marks omitted).

Plaintiff seeks primarily to challenge the visitation schedule and terms that govern her and her family's communications and contact with Mr. Rockefeller. (*See* Compl. at 3 (requesting that the Court "restore visitation and unrestricted communication" and "[r]equire Defendants to provide ADA-compliant access" to the Center's meetings regarding her Father "and written notice of any care plans").) But these terms cannot properly be considered state action. The state court's order specifically exempts from the state guardian's scope of authority the ability to set the schedule and terms of visitation. (Hunt Aff., Ex. C, at 8.) *Selby v. United States*, No. 24-CV-8761, 2025 WL 552609, at *3 (E.D.N.Y. Feb. 19, 2025) ("[T]he . . . claims [under § 1983] cannot proceed against [a private] [h]ospital,. . . as a private hospital is generally not considered a state or federal actor." (quotation marks omitted and alterations adopted)); *Anthony v. Med. Staff at Inst.*, 409 F. Supp. 3d 102, 105 (E.D.N.Y. 2016) (substantially same). This conclusion holds even when those hospitals are in receipt of Medicaid and Medicare funding, as Plaintiff has alleged here. (*See* Dkt. No. 81 at 5.) *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. Mar. 10, 2010) (summary order) ("[P]rivate actors and institutions, such as the . . . nursing home . . . are generally not proper Section 1983 defendants because they do not act under color of state law. . . . [T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action."); *Roberts v. Healthfirst*, No. 24-CV-1556, 2024 WL 1413032, at *2 (E.D.N.Y. Apr. 2, 2024) ("A defendant's affiliation with Medicaid programs does not make that defendant a state actor."), *appeal dismissed*, No. 24-1617 (2d Cir. Sept. 11, 2024); *Casino v. StonyBrook*

*Univ. Med. Ctr.*, No. 13-CV-6357, 2014 WL 317368, at *6 (E.D.N.Y. Jan. 27, 2014) (dismissing claim on the basis that nursing home was not a state actor); *Baum v. Northern Dutchess Hosp.*, 764 F. Supp. 2d 410, 430–33 (N.D.N.Y. 2011) (dismissing Section 1983 claims against private nursing home on the basis that the nursing home was not a state actor).

Indeed, in at least one case with remarkably similar facts to those alleged here, the district court relied on this principle to dismiss the plaintiff's claims. *Casino*, 2014 WL 317368, at *6. In *Casino*, a pro se plaintiff sued, *inter alia*, a private nursing home under Section 1983 based on the home's care of her husband, who had been put under court-appointed guardianship pursuant to Article 81 proceedings, and was living as a patient in the nursing home as a result. *Id.* at *1. The plaintiff alleged that the home was "encroaching on [her and her family's] visitation time" with her husband to provide care, declining to provide information to his family, failing to act in the best interests of her husband, and declining to provide her husband with access to his cell phone. *Casino*, 2014 WL 317368, at *1. Although the guardian and the home became involved in her husband's care as a result of the Article 81 proceedings, they were nevertheless held not to be state actors. *Id.* at *6. The same analysis governs here: the fact that the Center became involved in Mr. Rockefeller's care pursuant to a state court order is insufficient, without more, to render it a state actor. *Id.*; *see also Britt v. Buffalo Mun. Hous. Auth.*, 827 F. Supp. 2d 198, 205–06 (W.D.N.Y. 2011) (rejecting argument that private nursing home's actions constituted state action when the nursing home began treating patient at direction of a county medical center, was treated for dementia and received various medications, organized dental care, and discharged the patient but ultimately contacted Adult Protective Services to respond to perceived neglect); *cf. Galanova v. Portnoy*, 432 F. Supp. 3d 433, 445–46 (S.D.N.Y. 2020) (holding, in action challenging actions of guardian appointed pursuant to Article 81 proceedings, that state action

was not alleged as to the guardian defendant because the guardian's exercise of professional judgment is carried out in the interests of the represented individual, rather than in the interests of the state); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999) (explaining that, for the purposes of analyzing state action in cases involving court-appointed representatives, "courts focus on whether the duty of the person appointed runs to the state or the individual client" and, if the duty of the appointed entity runs to the individual rather than the state, this entity is "not considered a state actor for purposes of Section 1983") (collecting cases).

Absent some other basis to treat Northeast Center for Rehabilitation and Brain Injury as a state actor, its receipt of funding and its involvement in Mr. Rockefeller's care pursuant to the Article 81 proceeding are insufficient to render it susceptible to suit under Section 1983. This conclusion disposes of Plaintiff's retaliation claim asserted against the Center, as well as any abuse-of-process claim asserted pursuant to Section 1983. *McCoy v. W. End Residences Hous. Dev. Fund Co.*, No. 26-CV-1341, 2026 WL 710150, at *2 (S.D.N.Y. Mar. 12, 2026) ("Because only a state actor can be a proper defendant under Section 1983, private parties generally are not liable under the statute."). This conclusion is also dispositive of Plaintiff's claim asserted pursuant to the Federal Nursing Home Reform Act ("FNHRA"). *Ferrari v. Cuomo*, No. 23-CV-7715, 2025 WL 965131, at *12 (S.D.N.Y. Mar. 31, 2025) (collecting cases holding that private nursing homes are not susceptible to suit under the FNHRA); *Zietek v. Pinnacle Nursing & Rehab Ctr.*, No. 21-CV-5488, 2024 WL 243436, at *5 (S.D.N.Y. Jan. 23, 2024) (holding that, although the "Supreme Court [has] ruled that the FNHRA can, in certain circumstances, convey a private right of action enforceable against state actors under 42 U.S.C. § 1983," claims should be dismissed where a complaint does not allege facts sufficient to support the conclusion that the

defendant is a state actor); *see also Zavalidroga v. Hester*, No. 19-CV-1412, 2020 WL 210812, at *11 (N.D.N.Y. Jan. 14, 2020) ("[T]he Nursing Home Reform Act's provisions do not confer a right of action on [the plaintiff] that can be enforced against a private nursing home[.]").[8]

3. Claims Asserted on Behalf of Mr. Rockefeller

As the Court noted in its earlier Opinion, "several of Plaintiff's claims appear to be asserted derivatively on behalf of her father" and, as explained above, Plaintiff has also pleaded facts related to other individuals who are not parties to this Action. *Rockefeller II*, 2025 WL 2821826, at *3. "The provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Pena-Sanchez v. New York City*, No. 22-CV-4942, 2023 WL 3436066, at *2 (S.D.N.Y. May 11, 2023) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *see also Grant v. 115 Precinct*, No. 24-CV-3714, 2024 WL 2816559, at *2 (E.D.N.Y. June 3, 2024) ("[The] [p]laintiff, a pro se litigant, cannot represent anyone other than herself.").[9] Thus, the claims brought by Plaintiff on behalf of Mr. Rockefeller are

---

[8] In addition to the state action issues raised here, in its brief the hospital also raises serious questions about the merits of Plaintiff's claims.

[9] As the Court explained in its earlier Opinion, to the extent that Plaintiff argues that the asserted violation of her father's (or any other individual's) rights gives her a basis to sue on her own behalf, this is incorrect because Plaintiff does not have standing. *See Rockefeller II*, 2025 WL 2821826, at *3. An Article III court may "protect against injury" only "to the complaining party" herself, except in rare circumstances not present here. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). To satisfy the standing requirement, a plaintiff must show (1) that she suffered "an injury-in-fact," the invasion of a "legally protected interest" that is both (a) "concrete and particularized" and (b) "actual or imminent"; (2) a "causal connection between the injury" and

dismissed. *See Satchell v. City of New York*, No. 23-CV-11119, 2026 WL 734821, at *5 (S.D.N.Y. Mar. 16, 2026) (dismissing class action claims brought by a *pro se* plaintiff on the basis that a *pro se* plaintiff could not litigate claims on behalf of a class); *Bartolini v. Town of Dryden*, No. 24-CV-1380, 2025 WL 1488505, at *5 (N.D.N.Y. May 23, 2025) (same as to claims brought on behalf of a corporation).

4. ADA Claim

The foregoing analysis takes care of virtually all the claims asserted in Plaintiff's filings, except, arguably, her claims brought pursuant to the Americans with Disabilities Act and the Rehabilitation Act, her state law claim for intentional infliction of emotional distress, and any state law claim for abuse of process. For the reasons that follow, her ADA and Rehabilitation Act claims fail.

Plaintiff seeks to assert claims based on a failure to accommodate an asserted disability under the Americans with Disabilities Act and the Rehabilitation Act. (*See* Compl.; Dkt. No. 81 at 4–5.). "Because the standards adopted by the two statutes are nearly identical," courts generally analyze ADA and Rehabilitation Act claims together. *B.C. v. Mount Vernon Sch.*

---

the challenged conduct; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citations omitted). Plaintiff cannot demonstrate that her own "legally protected interest" was violated by any wrong done to Mr. Rockefeller, and she has alleged no other facts that could provide her with standing to sue on his behalf. *See, e.g.*, *Gray-Davis v. Rigby*, No. 14-CV-1490, 2016 WL 1298131, at *7 (N.D.N.Y. Mar. 31, 2016) ("While plaintiffs may exercise third-party standing in some circumstances, [a] section 1983 civil rights action is a personal suit and may not be brought by a relative, even the parents, spouse or children of the individual whose civil rights were violated." (internal quotation marks and citation omitted)); *California Advocs. for Nursing Home Reform, Inc. v. Chapman*, No. 12-CV-6408, 2013 WL 2422770, at *6–7 (N.D. Cal. June 3, 2013) (dismissing NHRA claims against corporate operator of nursing homes, including claim asserted by relative of deceased nursing home resident, due to failure to allege sufficiently direct injury that would support standing).

*Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). To establish a prima facie case under either statute, a plaintiff generally must show that she is a qualified individual with a disability, that she was excluded from participation in or denied the benefits of the defendant's services, programs, or activities or otherwise discriminated against, and that the exclusion or discrimination was because of her disability. *See id.* Unlike the ADA, however, which requires the defendant to be a public entity, the Rehabilitation Act also applies to private entities that constitute a "program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a); *Adams v. Town of Clarkstown*, No. 24-CV-5147, slip op. at 17 (S.D.N.Y. Sept. 22, 2026) ("Unlike Title II of the ADA, § 504 of the Rehabilitation Act is not limited to public entities. Rather, § 504 applies to a program or activity receiving Federal financial assistance." (internal quotation marks omitted)); *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (noting that "the standard for Rehabilitation Act claims is generally the same as for ADA claims, with the additional requirement that defendants must receive federal funding"); *Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289, 2023 WL 1966120, at *6 (S.D.N.Y. Feb. 13, 2023) (requiring plaintiff to prove that "the defendant receives federal funding" as one of the elements for a Rehabilitation Act claim).

"The ADA defines 'disability' as a 'physical or mental impairment that substantially limits one or more major life activities,'" *B.C.*, 837 F.3d at 159, a "record of such an impairment," or "being regarded as having such an impairment," 42 U.S.C. § 12102(1). "Section 504 expressly incorporates, with certain qualifications not applicable here, the ADA's definition." *B.C.*, 837 F.3d at 159 (footnote omitted). Further, "[a] plaintiff may base [a] Title II [ADA] claim," and by extension a Rehabilitation Act claim, "on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021).

Plaintiff's ADA and Rehabilitation Act claims fail for multiple reasons.

First, her ADA claim against the Northeast Center cannot succeed because she has not alleged facts sufficient to support the conclusion that the Northeast Center is a "public entity" for purposes of Title II. *See* 42 U.S.C. § 12131(1) (defining the term "public entity" to mean "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."). Neither private nursing homes nor hospitals are "public entities" as contemplated by the ADA. *See Brown v. Interborough Developmental & Consultation Ctr.*, No. 26-CV-527, 2026 WL 1556349, at *3 (E.D.N.Y. June 2, 2026) ("[The Defendant] is a private healthcare facility, not a public entity subject to suit under Title II because it does not fall under any of the public entity categories . . . ."); *Alaidrus v. United States*, No. 25-CV-491, 2025 WL 1695450, at *3 (N.D.N.Y. June 17, 2025) ("A private hospital is not a public entity for purposes of Title II." (quotation marks omitted)), *report and recommendation adopted*, 2026 WL 196735 (N.D.N.Y. Jan. 26, 2026); *Sandler v. Benden*, No. 15-CV-1193, 2016 WL 9944017, at *16 (E.D.N.Y. Aug. 19, 2016) (holding that a private company "in the nursing home and rehabilitation facility business" in receipt of federal funding was not a "public entity" under the statutes), *aff'd*, 715 F. App'x 40 (2d Cir. 2017).

As for Plaintiff's Rehabilitation Act claim against the Northeast Center, to the extent the Center receives federal financial assistance, its status as a private entity does not itself preclude liability under the Rehabilitation Act. 29 U.S.C. § 794(a) (the Rehabilitation Act also applies to private entities that constitute a "program or activity receiving Federal financial assistance"); *Adams v. Town of Clarkstown*, No. 24-CV-5147, slip op. at 17 (S.D.N.Y. Sept. 22, 2026)

("Unlike Title II of the ADA, § 504 of the Rehabilitation Act is not limited to public entities. Rather, § 504 applies to a program or activity receiving Federal financial assistance." (internal quotation marks omitted)). However, Plaintiff's claim there fails for another reason, as explained below.

Second, although "the County is a 'public entity' that is subject to the ADA," *Scharff v. County of Nassau*, No. 10-CV-4208, 2014 WL 2454639, at *6 (E.D.N.Y. June 2, 2014), Plaintiff's ADA claim against the County also fails because Plaintiff has not alleged that the County excluded her from any of its "services, programs, or activities" because of a disability. Nowhere in her Complaint or other filings does she identify any such service, program, or activity from which the County excluded her.

Finally, Plaintiff's ADA claims against both Defendants independently fail because she has not adequately alleged that she has a disability within the meaning of the ADA, as she must. *See B.C.*, 837 F.3d at 158–59 (requiring plaintiff with claims under the ADA and the Rehabilitation Act to show that they are "a qualified individual with a disability" (internal quotation marks omitted)). And because the Rehabilitation Act incorporates the ADA's definition of disability, *see id.* at 159, Plaintiff's failure to adequately allege a disability defeats her Rehabilitation Act claims, as well. *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *12 (S.D.N.Y. Mar. 22, 2022) (dismissing a Rehabilitation Act claim where the plaintiff "failed to allege that he has a disability under the Rehabilitation Act"); *Dotson v. Farrugia*, No. 11-CV-1126, 2012 WL 996997, at *7 (S.D.N.Y. Mar. 26, 2012) (dismissing ADA and Rehabilitation Act claims where threadbare pleadings did not support the existence of a disability).

Despite her voluminous filings, the Court is unable to discern *any* facts in Plaintiff's Complaint or any of the other documents provided—beyond the conclusory allegation that Plaintiff has a "disability"—that would support the *legal conclusion* that she is disabled within the meaning of the ADA. (*See generally* Compl.; *see also, e.g.*, Dkt. No. 81 at 4 (purporting to address earlier deficiencies but alleging exclusively that Plaintiff "is a qualified individual with a disability, including disability-related trauma and neurological imitations that substantially limit major life activities such as communication and participation in public services under hostile or coercive conditions"); Dkt. No. 94-1 at 3–4 (purporting to attach a document from a physician, although the formatting is somewhat suggestive of the document having been created with an artificial generative intelligence tool, and nevertheless simply stating that the "patient has a qualifying medical condition that can substantially limit major life activities in certain high-stress or adversarial environments").)

Accordingly, Plaintiff's ADA and Rehabilitation Act claims cannot survive the instant Motion to Dismiss. *See Williams v. NYC Health & Hosps. Corp.*, No. 24-CV-5467, 2025 WL 1334667, at *7 (S.D.N.Y. May 7, 2025) ("Because [the] [p]laintiff fails to plead that she is disabled within the meaning of the ADA, her ADA claim is dismissed without prejudice.").

5. State Law Claims

Given, as described above, that none of Plaintiff's federal claims survives the Motions to Dismiss, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Garrasi v. Wells Fargo Bank, N.A.*, No. 22-921, 2024 WL 191802, at *2 (2d Cir. Jan. 18, 2024) (summary order) (affirming a district court's dismissal of claims asserted pursuant to state law where the court dismissed the jurisdiction-conferring federal claim (citing *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006))); *All. of Auto. Mfrs., Inc. v. Currey*,

610 F. App'x 10, 14 (2d Cir. 2015) (summary order) (same); *One Commc'ns Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims[.]" (citing *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 52 (2d Cir. 2009))); *Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, No. 23-CV-7052, 2025 WL 929710, at *31 n.29 (E.D.N.Y. Mar. 27, 2025) (declining supplemental jurisdiction over state claims and dismissing them once federal claims were dismissed), *appeal withdrawn*, No. 25-1135, 2025 WL 2180773 (2d Cir. July 9, 2025).

## III. Conclusion

For the reasons set forth above, the Motions to Dismiss are granted. In light of the fact that this is the first time Defendants have moved to dismiss Plaintiff's claims on the merits, the dismissal is without prejudice. *Calchi v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 22-CV-1341, 2023 WL 2447399, at *2 (S.D.N.Y. Mar. 10, 2023) ("Because this is the first adjudication of his claims on the merits, Plaintiff's claims are dismissed without prejudice."). If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiff must do so within 30 days of the date of this Order. The amended complaint will replace, not supplement, the previous complaints. *See id.* The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice. The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. No. 52 and Dkt. No. 64 and to mail this Opinion to Plaintiff.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge